Yolanda Huang (State Bar No. 104543)
LAW OFFICES OF YOLANDA HUANG
499 14th Street, Suite 300
Oakland, California 94612
Telephone:  (510) 839-1200
Facsimile:   (510) 444-6698
E-Mail:      yhuang.law@gmail.com

DENNIS CUNNINGHAM, SBN 112910
115A Bartlett St.
San Francisco, CA 94110
Telephone: (415) 285-8091
Facsimile:  (415) 285-8092
E-Mail:      denniscunninghamlaw@gmail.com

Attorneys for Plaintiffs
Tikisha Upshaw, Tyreka Stewart and
Andrea Hernandez

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| TIKISHA UPSHAW, TYREKA STEWART and ANDREA HERNANDEZ,  on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ALAMEDA COUNTY; ALAMEDA COUNTY SHERIFF'S OFFICE; SHERIFF GREGORY J. AHERN; ASSISTANT SHERIFF D. HOUGHTELLING,  COMMANDER TOM MADIGAN; CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50. <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS** <br><br> **CLASS ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

1

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Upshaw et al v. Alameda County,*  United States District Court, Northern District of California, Case No. _

## **PRELIMINARY STATEMENT**

1.      This is a civil rights class action in which the Plaintiffs, on behalf of themselves and a class of similarly situated individuals, seek relief from Defendants' violations of Plaintiffs' rights and privileges secured by the Eighth and Fourteenth Amendments of the United States Constitution.

2.      Alameda County Jails consists of two facilities, Glen Dyer Jail in Oakland and Santa Rita Jail in Dublin.  Women, including pregnant women are held only at the Santa Rita Jail.  Pregnant women are housed with other prisoners.  The conditions described herein apply equally to pregnant prisoners.

3.      In the cells, the lights are never off.  Even at night the lights are only slightly dimmed and the lighting is bright enough to read.  Outside of the cells are tier lights.   The jail schedule calls for the overhead tier lights, and the lights in the common areas to go  out at 11 p.m., and breakfast is served between 4  and 4:30 a.m.  This schedule designed by defendants at Santa Rita jail prevent any prisoner from being able to have sleep durations of more than five and a half (5.5) hours a night, assuming that the prisoner is able to sleep with 24-hour lights in their cells.  In addition,  although the schedule theoretically permits a sleep duration of up to five and a half hours; on a regular basis, and with great frequency, sheriff deputies routinely disrupt prisoners' limited sleep duration, often hourly, through their activities and conduct including repeatedly shining bright white flashlights into prisoners' eyes; banging keys and flashlights on metal doors;  forcing prisoners to wake up and acknowledge the presence of sheriff deputies; turning on and leaving on overhead lights; yelling and shouting; creating loud noises; operating machines; making announcements over the public address system; and having prisoner activities including medical appointments and medication distribution at 3 a.m.

4.       Prisoners at the Santa Rita Jail suffer from chronic deprivation of sleep and disturbance of sleep.  This ongoing, daily sleep deprivation and disturbance has created significant negative impacts on prisoners' abilities to function at many levels.   Prisoners are negatively impacted cognitively, functionally, and psychiatrically.   Cognitive impairment adversely impacts pretrial prisoners' ability to assist in their legal defense.  Prisoners' overall health and immune systems are negatively impacted resulting in health issues including bacterial and viral infections.  Pregnant women are subject to more significant negative health impacts from sleep deprivation.  Sleep deprivation creates higher levels of pro-inflammatory serum that are associated with postpartum depression and preterm delivery.

5.      Prisoners' efforts to grieve this situation were prevented by defendants' refusal to permit grievances through withholding of blank grievance forms, destruction of completed grievance forms, or retaliation for the filing of grievances.  Grievances submitted and received were overwhelmingly denied.

6.     As a result of this significant sleep deprivation and sleep disruption, and the resulting emotional and cognitive impairment, prisoners find themselves short tempered and irritable, experience difficulty exercising emotional control, unable to handle frustration and often lack the necessary behavior controls demanded by the jail system.  Sleep deprivation causes more sensitivity to physical pain.  As a result of this significant sleep deprivation and disruption, prisoners suffer disciplinary and punitive consequences with ensuing additional deprivations including loss of telephone and visiting privileges, loss of the ability to purchase commissary and placement into solitary confinement,  the added social and sensory isolation of solitary confinement compounds the cognitive, functional and psychiatric impairments already existing due to sleep disruption and deprivation.

7.     This civil rights class action lawsuit seeks to end this long-standing unconstitutional practice at both Alameda County Jail facilities.   The individual Plaintiffs bring this action on behalf of themselves and those similarly situated against Defendants COUNTY OF ALAMEDA ("County"); THE ALAMEDA COUNTY SHERIFF'S OFFICE ("ACSO"); GREGORY J. AHERN, INDIVIDUALLY AS SHERIFF OF THE ALAMEDA COUNTY SHERIFF'S OFFICE, ASSISTANT SHERIFF D. HOUGHTELLING,  COMMANDER TOM MADIGAN; CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50

8.     Without the Court's intervention, the Defendants in this action will continue to violate the Eighth Amendment and State standards by deliberately depriving, preventing, interrupting and disturbing the sleep of prisoners at an Alameda County Jails.

Plaintiffs TIKISHA UPSHAW, TYREKA STEWART and ANDREA HERNANDEZ, by and through their attorneys, brings this action on behalf of themselves and other women prisoners similarly situated and alleges as follows:

## JURISDICTION

9.     This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights). This Court may grant declaratory relief under 28 U.S.C. § 2201.

10.     Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 (claims arising under the United States Constitution) and §1343 (claims brought to address deprivations, under color of state authority, of rights privileges, and immunities secured by the United States Constitution), and, by

pendent jurisdiction, California Constitution, Article 1, Section 7 and the aforementioned statutory and constitutional provisions.

11. Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

12. Plaintiffs filed a governmental claim with the COUNTY OF ALAMEDA on November 1, 2018. These claims were rejected on December 7, 2018.

### 13.    **VENUE AND INTRADISTRICT ASSIGNMENT**

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district. The claims alleged herein arose in the County of Alameda, State of California. Therefore, venue and assignment, under 28 U.S.C. § 1391(b), lies in the United States District Court for the Northern District of California, San Francisco Division or Oakland Division.

15. This Court has personal jurisdiction over each and every Defendant because, upon information and belief, all Defendants were residents of California, were employed in California, or otherwise conducted business in California, and all were acting under color of law during all relevant times.

### 16.    **JURY DEMAND**

17. Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Federal Rule of Civil Procedure 38(b).

### 18.    **PLAINTIFFS**

19. Plaintiff, TIKISHA UPSHAW, TYREKA STEWART and ANDREA HERNANDEZ are pretrial detainees housed at the Santa Rita Jail in Dublin, California, in Alameda County and under the authority of the Alameda County Sheriff's Office.

20. Plaintiff UPSHAW and HERNANDEZ are currently incarcerated in what ACSO names "administrative segregation" which is essentially solitary confinement. Plaintiff UPSHAW has been previously housed in a 2-person cell. Plaintiff HERNANDEZ has been previously housed in 2-man cells and in the 18-person cells.

21. Plaintiff STEWART is currently housed in a two-person cell in Housing Unit 21.

22. Plaintiff HERNANDEZ believes that she is currently pregnant although her pregnancy has not yet been confirmed by a medical examination.

4

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Upshaw et al v. Alameda County,* United States District Court, Northern District of California, Case No. _

23. All Plaintiffs have been and remain residents of California.

**DEFENDANTS**

24. Defendant ALAMEDA COUNTY is a county in the State of California.

25. Defendant ALAMEDA COUNTY SHERIFF'S OFFICE ( "ACSO") is a law enforcement agency within ALAMEDA COUNTY and, relevant here, is charged with operating the Santa Rita Jail. The ACSO has failed to properly train and supervise and failed to require compliance with existing policies and procedures, by officers, deputies and other employees who had custody of PLAINTIFF and class members at Santa Rita or Glen Dyer Jail, and failed and refused to adopt appropriate and necessary policies and procedures regarding the treatment and care of PLAINTIFF and class members;

26. Defendant GREGORY J. AHERN is, and at all times relevant to this Complaint was, the Sheriff of Alameda County. As Sheriff of Alameda County, Defendant AHERN holds the command and policy making position with regard to County Jails, including Santa Rita Jail. Defendant Sheriff AHERN has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the unconstitutional and inhumane conditions, actions, policies, customs and practices that prevail at Santa Rita Jail, as described fully below. Sheriff AHERN has, wholly or in part, directly and proximately caused and, in the absence of the injunctive relief which PLAINTIFF seek in this Complaint, will continue in the future to proximately cause, the injuries and violations of rights set forth fully below. Defendant Sheriff AHERN is sued in his individual capacity.

27. Defendant Assistant Sheriff D. HOUGHTELLING is, and at all times relevant to this Complaint was, the Assistant Sheriff of Alameda County in charge of the Detentions and Corrections Unit ("DCU"), which includes the Santa Rita Jail. As Assistant Sheriff of Alameda County in charge of DCU, Defendant D. HOUGHTELLING has at times relevant to this Complaint held a command and policy making position with regard to County Jails, including Santa Rita Jail. Defendant Assistant Sheriff D. HOUGHTELLING has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Santa Rita Jail, as described fully below. Assistant Sheriff D. HOUGHTELLING has, wholly or in part, directly and proximately caused and, in the absence of the injunctive relief which Plaintiffs seek in this Complaint, will continue in the future to proximately cause, the injuries and violations of rights set forth fully below. Assistant Sheriff D. HOUGHTELLING is sued in his individual capacity.

28. Defendant TOM MADIGAN is, and at all times relevant to this Complaint was, the Commander in Charge of Alameda County Sheriff Office's Detentions and Corrections Unit ("DCU")

which includes the Santa Rita Jail. As the Commander in Charge of DCU, Defendant MADIGAN has at times relevant to this Complaint held a command and policy making position with regard to County Jails, including Santa Rita Jail. Defendant MADIGAN has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Santa Rita Jail, as described fully below. Defendant MADIGAN has, wholly or in part, directly and proximately caused and, in the absence of the injunctive relief which Plaintiffs seek in this Complaint, will continue in the future to proximately cause, the injuries and violations of rights set forth fully below. Defendant MADIGAN is sued in his individual capacity.

29.     Defendant T. RUSSELL, D. HESSELEIN and D. SKOLDKVIST are, and at all times relevant to this Complaint were, the Detention and Corrections Captains of ACSO. As the captains with direct supervision over Glen Dyer and Santa Rita Jail, Defendant RUSSELL, HESSELEIN, and SKOLDKVIST are responsible for the daily conditions and operations of Santa Rita Jail, including the training and supervision of floor deputies including defendants DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50. Defendant RUSSELL and HESSELEIN and SKOLDKVIST are regularly, if not daily, on the premises at an Alameda County Jail. It is their responsibility to be knowledgeable and familiar with the actual daily conditions and operations of Santa Rita Jail and Glen Dyer Jail. As the Detention and Corrections Commanders of ACSO, Defendants RUSSELL, HESSELEIN, and SKOLDKVIST have caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Santa Rita Jail, as described fully below. Defendant RUSSELL, HESSELEIN and SKOLDKVIST have, wholly or in part, directly and proximately caused and, in the absence of the injunctive relief which Plaintiffs seek in this Complaint, will continue in the future to proximately cause, the injuries and violations of rights set forth fully below. Defendant RUSSELL, HESSELEIN and SKOLDKVIST are sued in their individual capacities.

30.     DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 25 are housing unit deputies, who each caused some of the injuries, each contributed to the injuries, deprivations and losses complained of herein and is each sued in their individual capacities by taking actions to disrupt and interrupt Plaintiffs and class members ability to

6

sleep; including shining bright flashlights into the eyes of sleeping prisoners; disrupting prisoners' sleep by forcing prisoners to wake up during designated sleep periods; banging on the metal doors to force sleeping prisoners to wake up; and, making loud noises sufficient to wake up sleeping prisoners.

31.     Does 26 through Does 50 are command staff and sheriff deputies who staff Glen Dyer and Santa Rita Jails and all of whom contributed to the injuries, deprivations and losses complained of herein. The Doe defendants are sued in their individual capacities.

## FACTUAL ALLEGATIONS

### I.     SLEEP DEPRIVATION

32.     The ACSO and its chiefs, commanders and other officials operate the Alameda County Jails including Glen Dyer located in Oakland and Santa Rita located in Dublin.  Of the two county jails located in ALAMEDA COUNTY, women are housed only at the Santa Rita Jail.

33.     Santa Rita Jail is a "mega-jail" and ranks as the third largest facility in California and the fifth largest in the nation.  Designed to hold up to 4,000 prisoners, it currently holds on average 2,500 prisoners with about 10% or 250 of those being women.  Men and women are segregated.

34.     Santa Rita is composed of numbered housing units, with various configurations of cells for prisoners, including two-person cells, 18-person cells with 9 sets of bunk beds, and solitary confinement single person cells.  In each of the housing units at Santa Rita Jail, whether two-person cell, solitary confinement or what ACSO terms "dormitory" 18-person cells, Plaintiffs and all prisoners are subjected to lights 24 hours a day.  Main lights in the common areas are turned off at 11 am, Cell lights are dimmed, but still bright enough to read by.  If you are able to sleep with cell lights on, theoretically the night time sleep schedule provides for at most five and a half hours of sleep per night.

35.     According to the Centers for Disease Control and Prevention, an adult between the ages of 18 and 60 needs 7 or more hours of sleep per night for good health. Not getting enough sleep is linked with many chronic diseases and conditions, such as type 2 diabetes, heart disease, obesity, and depression.  The National Institute of Health has published research showing that sleep deprivation negatively impacts cognitive functioning over time, contributes to accidents and errors and alterations in metabolic and endocrine function of individuals, including increases in pro-inflammatory serum cytokines which has serious negative consequences for pregnant women.

36.     Although the schedule provides for a possible five and a half hours of sleep, the entity defendants and SHERIFF AHERN have several practices, customs, and/or policies that cause to PLAINTIFFS and all members of the prisoner class to be chronically deprived of the essential and human need for sleep.

## II.     LIGHTING SCHEDULE

35.     Light disrupts human sleep and Alameda County Jails' lighting causes and/or contributes to the prisoners' regular and chronic sleep deprivation.

36.     Prisoners are in a lit environments 24 hours each day because the lights in their cells remain lit, albeit dimmed.  The dim condition of cell lights is still bright enough to read by.  Furthermore, at times,  particularly in Housing Unit 24 the main overhead lights are either left on, or for unknown reasons turned on after 11 p.m.

37.     Assuming arguendo that the dimmed lights at 11 p.m., are dim enough not to interfere with sleep, the night time sleep schedule is only for a maximum of five and a half hours.  The jail turns lights back on to full illumination between 3:30 a.m. and 4:30 a.m. to serve breakfast.

38.     Once breakfast is served, the jails commences full throttle activities with the attendant lights and noise including the clearing of breakfast trays, cell and housing unit cleaning, public announcements, the movement of prisoners who are required to attend court; "pill call" for medication distribution, and classes.

39.     As a result, the longest period of time in which PLAINTIFFS or any prisoner in Santa Rita Jail is theoretically able to sleep is 5 to 5.5 hours, far less than the United States Center for Disease Control's recommended 7 hours.  Many prisoners have a more difficult time getting any regular sleep because of the 24 hours lights.

## III.     VISUAL SAFETY CHECKS

40.     Pursuant to California Code of Regulations, tit. 15, § 1027.5, routine visual safety checks must be conducted of all prisoners at least hourly.

41.     At the Santa Rita Jail, defendants DEPUTY WATSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK and Does 1 to 25 do not limit their hourly routine checks to visual observations. Instead, said defendants engage in activities to actually wake up prisoners during the sleep period by shining bright white light flashlights into the eyes of sleeping prisoners, demanding that prisoners wake and respond or acknowledge the guards but during these checks.  If the bright flash lights do not cause the sleeping prisoner to respond or acknowledge the deputy, said deputies will bang on the metal doors with keys, or flash lights in order to force prisoners to awaken and acknowledge the deputy. If banging does no work, guards will enter the cell and yell the prisoner's name until the prisoner wakes up.  Thus, defendants force prisoners to awaken almost hourly.

42.     These practices cause and/or contributes to PLAINTIFFS' sleep deprivation.

### IV.  MAINTENANCE AND CLEANING

43.  During the nighttime sleep hours, the sheriff deputies on duty have fewer responsibilities for prisoners because prisoners are locked down in their cells.  The ACSO has a policy and practice of performing maintenance work and cleaning during the nighttime sleep hours, including vacuuming, repairs and cleaning of metal portions of the jail, using of machinery and equipment and other tasks which cause a significant amount of noise. Sheriff deputies and prisoner workers yell at each other and slam the metal doors without regard to the prisoners' sleep.

44.  This constant, loud, and excess noise during the night regularly interrupts the limited sleep of the prisoners, causing and/or contributing to their persistent sleep deprivation.

### V.  NEW-HIRE TRAINING & MALE  DEPUTIES

45.  The ACSO conducts a significant amount of new-hire training during the nighttime hours. All deputies of the Alameda County Sheriff's Office have their first assigned duty at a jail.  As new hires, these new deputies receive assignments to the least desirable shifts, which is the graveyard shift. Therefore, all of their on the job training is conducted at night, and primarily during the nighttime sleep hours.  This training includes whole cell searches where sheriff deputies, often in swat uniforms, and heavily armed, announce their entrance.  All prisoners are required to wake up and lie face forward on the floor of their cells.  New hires are trained in the process, whereby some prisoners are then handcuffed, and prisoners are then evacuated and sequestered one at a time to other areas of the jail, including the outside yard, the multi-purpose room and the isolation cells.  New hires are trained on how to do full body searches in the isolation cells.  New hires are trained on the sequestering.  New hires are trained on how to conduct cell searches.  These exercises and practices require that all prisoners wake up, and often stand or otherwise remain awake until the exercise is completed.

46.  When male deputies enter the female housing units at night, their presence will be loudly broadcast, and the order will be issued that all women have to cover themselves up for the male deputy entering the housing unit.

47.  These actions are so disruptive and loud that they cause and/or contribute to the prisoners' sleep deprivation.

### VI.  PILL CALLS & JAIL ACTIVITIES

49.  During these nighttime hours, ACSO distributes medication or provides medical attention. These activities and services are announced by loud verbal announcements, sometimes through the public address system, broadcast to all prisoners.

50.     These actions are so disruptive and loud that they cause and/or contribute to the prisoners' sleep deprivation.

## VII.     EFFORTS TO BLOCK CELL LIGHT SUBJECT PRISONERS TO PUNISHMENT

51.     For Plaintiffs and members of the prisoner class, they must live with the light in their cells on 24 hours a day, and many attempt to devise means to block the light.  Blocking the light is a prohibited activity in the jail, which subjects prisoners to punishment.

52.     Some prisoners try to hide from the ever-present light in their cell by placing blankets over their head and eyes.  However, when defendants DEPUTY WATSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK and Does 1 to 25 do checks on prisoners, they demand that prisoners wake and move especially for those prisoners trying to sleep with blankets over their eyes.

53.     These conditions actions practice causes and/or contributes to PLAINTIFFS' and members of the prisoner class' sleep deprivation.

## VIII.     SOLITARY CONFINEMENT HAS GREATER SLEEP LIMITATIONS

54.     In the segregation or solitary confinement cells, prisoners are allowed out only one at a time, for an hour, into the common area.  Access to telephones and showers are available only in the common area.

55.     The hours in which prisoners are allowed out into the common area are scheduled up to 1 a.m. As a result, the common area and housing unit lights are often on until 1 a.m. and as a result the nighttime sleep hours for the segregation or solitary confinement cells is limited to at most 3 and a half hours, from 1 a.m. to 4:30 a.m.  When there is pill call at 3 a.m., the maximum possible night time uninterrupted sleep time is only 2 hours from 1 a.m. to 3 a.m.

56.     These conditions actions practice causes and/or contributes to PLAINTIFFS' and members of the prisoner class' sleep deprivation.

57.     Plaintiff UPSHAW's continuous sleep deprivation over the two years of her pretrial incarceration has had a marked negative effect on her mental well-being, her psychological and physical health, and her decision-making ability. Plaintiff UPSHAW has gotten sick more often due to a weakened immune system. She has trouble with thinking and concentrating and has had difficulty assisting her attorneys in preparing her legal defense on her pending charges.   Due to prior accidents and injuries, Plaintiff Upshaw has chronic pain.  As a result of the sleep deprivation, she is now experiencing increased sensitivity to pain, which results in her needing anti-inflammatory and pain medication on a constant basis.  Because the jail has refused to consistently make these medications available, Plaintiff

Upshaw is in physical pain, 24 hours a day.  Plaintiff UPSHAW has difficulty with situations that require patience and has become moody and quick-tempered.   She has had difficulty understanding what others say, and has had difficulty communicating clearly to others.  As a result, whereas earlier on, she was able to avoid conflicts, or de-escalate situation, in the Fall of 2018, she was unable to calm or avoid an argument with another prisoner, who was also sleep deprived and therefore short tempered and irritable. As a result, Plaintiff UPSHAW was disciplined, resulting in loss of privileges, and further punished by transfer to a segregation cell (solitary confinement) which included a complete loss of privileges, mental health counseling, and various other punishments.  Plaintiff UPSHAW is now confined to her cell 23 hours a day and has been deprived of all social interaction.  The negative impacts of sleep disruption and sleep deprivation is now compounded by her physical and social isolation.

58.        Plaintiff STEWART has been in custody for five months.  In the five months of her incarceration she is already suffering from significant sleep disturbance due to the regular sleep deprivation with significant impacts on her abilities to function at many levels. She is impaired cognitively, functionally and psychiatrically.   She cannot assist in her defense in a meaningful manner and is cognitively impaired.  It appears that her overall health is being negatively impacted.

59.        Plaintiff HERNANDEZ feels and believes that she is pregnant although her pregnancy, in the early stages, has not yet been confirmed by a medical test.  Plaintiff HERNANDEZ has a personal history of mental/emotional health challenges and has been under the care of medical staff for her mental /emotional health issues since she was 18.  Pregnancy is a time in which women are at a particular risk for denial of sleep because of the physical changes of pregnancy.  Pregnancy is also a time in which women are at a heightened risk of depression.  Sleep deprivation causes systemic inflammation through higher plasma concentrations of pro-inflammatory serum cytokine levels which have been associated with pregnancy and postpartum depression and negative maternal and fetal outcomes including preterm delivery.  Because plaintiff Hernandez is currently housed in solitary confinement, she is isolated 23 hours a day, denied the ability to have social interactions, denied the ability to take classes.  In addition, she is subjected to significant sleep disturbance which the jail schedule only often permits only 3 hours for undisturbed sleep.  Plaintiff Hernandez is currently at risk due to sleep deprivation and disruption for increased mental and emotional instability and impaired cognitive functions, as well as adverse pregnancy outcomes.

60.        As a result of this sleep disturbance and sleep deprivation, Plaintiffs' and all class members' overall health are negatively impacted.  They are experiencing memory loss, loss of words, loss of names, difficulty remembering sequences of events.  They are subject to depression, anxiety, and

emotional distress.  They are subject to overall health detriments, including a compromised immune system, and an increased sensitivity to pain

## POLICY, CUSTOM, OR PRACTICE ALLEGATIONS

61.    Defendant GREGORY AHERN, was a final policy-making authority for Defendants ALAMEDA COUNTY and ALAMEDA COUNTY SHERIFF'S OFFICE as it relates to the training, supervision, and discipline of sheriff's deputies employed at the Santa Rita Jail and acting under his command. See Cal. Const, art. XI, § 1(b).

62.    Defendant HOUGHTELLING, as the assistant sheriff and defendant MADIGAN as the Commander and Does 11-20 were the supervisory officers over the detentions and corrections unit, are/were policy-making authorities, based on a delegation of authority, for Defendants ALAMEDA COUNTY and ALAMEDA COUNTY SHERIFF'S OFFICE as it relates to the training, supervision, and discipline of sheriff's deputies employed at the Santa  Rita Jail and acting under their command. Defendants ALAMEDA COUNTY, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, HOUGHTELLING TOM  MADIGAN, and DOE 11 to 20, acting under color of state law and as policymaking authorities, knew or should have known that, resulting from their inappropriate and inadequate policies, customs or practices regarding prisoners basic human need for sleep, subordinate employees under their command, including Defendants DOE 1 thru DOE 10 were implementing  and maintaining the scheduling, programming and practices at Santa Rita Jail, which only permits all prisoners, at the most,  5.5 or less of nighttime sleep; and which subordinate employees under their command, including Defendants DOE 1 thru DOE 10  routinely disrupted, prevented and interfered with night-time sleep.

63.    Defendants ALAMEDA COUNTY, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, HOUGHTELLING, TOM  MADIGAN, and DOE 11 to 20, were or should have been on notice of these policies, customs, or practices or the inadequacy of the policies, customs or practices through multiple sources including prior litigation wherein the plaintiffs complained of lights being left on all night;  (Mohrbacher v. 3:18-cv-00050-JD, Dkt. 18, Dkt . 72, Dkt 103).  Plaintiffs and members of the class had attempted, repeatedly, to file grievances regarding this issue, but in numerous occasions were denied Santa Rita Jail grievance forms, and were told that prisoners could not grieve the schedule, the sleep disturbance or the lights, and for this reason only know of one successful grievance during this time on this subject.  Federal courts in the 9th Circuit have held since 1990 that there is no legitimate penological justification for forcing prisoners to be in cells "constantly illuminated"   which causes physical and psychological harm.

64.     On information and belief, additional evidence and information related to Defendants ALAMEDA COUNTY, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, D. HOUGHTELLING, TOM  MADIGAN, Does 26 to Does 50's policies, customs, or practices will be sought and obtained during the course of this litigation. Although access to the existence or absence of internal policies, customs, or practices prior to discovery is necessarily limited, on information and belief, Defendants ALAMEDA COUNTY, ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY AHERN, D. HOUGHTELLING TOM  MADIGAN, Does 26 to Does 50's have access to and/or knowledge of past and subsequent events and to statements of internal policies, customs, or practices at issue and, in some respects, may be in sole possession of evidence and facts needed to support or refute these claims.

## CLASS ACTION ALLEGATIONS

65.     All Plaintiffs bring this action on their own behalf and, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of a class of all women who are now, or will be in the future, incarcerated in the Alameda County Jails ("Prisoner Class").

<u>Numerosity: Fed. R. Civ. P. 23(a)(1)</u>

66.     The Prisoner Class is sufficiently numerous that joinder of all members of the class is impracticable and unfeasible. Currently, there are 200 women prisoners in custody on any one day in Santa  Rita Jail and approximately 9,500 women are processed and incarcerated during the year in Santa Rita Jail.  All prisoners in the Jails are subject to Defendants policies and procedures regarding sleep denial and sleep disturbance and the refusal to permit grievances.   Due to these policies and procedures, all prisoners in the Jails are currently harmed or are at substantial risk of being harmed, by these Jail practices.

67.     The Prisoner Class members are identifiable using records maintained in the ordinary course of business by Defendants.

<u>Commonality: Fed. R. Civ. P. 23(a)(2)</u>

68.     There are multiple questions of law and fact common to the Prisoner Class, including, but not limited to:

a. Whether the jail's requirement that prisoners be in lit surroundings 24 hours a day violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

b.  Whether Defendants' scheduling to provide for only a maximum potential duration of five and a half (5.5) hours of nighttime sleep violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

c.  Whether Defendants' policies and practices of regulation sleep disruption violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

d.  Whether Defendants' policies and practices of not permitting prisoners to have a sufficient block of uninterrupted sleep poses a substantial risk of serious harm to prisoners in their custody;

e. Whether Defendants have been deliberately indifferent to the Prisoner Class members' risk of injury and harm from the scheduling of an insufficient duration of sleep and the regular disruption of the limited sleep duration they are provided;

69.     Defendants are expected to raise common defenses to these claims, including denying that their actions violate the law.

<u>Typicality: Fed. R. Civ. P. 23(a)(3)</u>

70.     The claims of the named Plaintiffs are typical of the claims of the members of the proposed class as their claims arise from the same policies, practices, and courses of conduct, and their claims are based on the same theory of law as the Prisoner Class claims.

<u>Adequacy: Fed. R. Civ. P. 23(a)(4)</u>

71.     Plaintiffs will fairly and adequately represent and protect the interests of the putative Prisoner Class members and diligently service as Class Representatives. Plaintiffs' interests are co-extensive with those of the Prisoner Class and Plaintiffs have no conflict(s) of interest that would be antagonistic to those of the other class members. Plaintiffs have retained counsel who are competent and experienced in complex class action litigation and prisoner's rights litigation and who possess the resources necessary to fairly and adequately represent the Prisoner Class.

<u>Fed. R. Civ. P. 23(b)</u>

72.     This action is also maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants policies, practices, actions, and omissions that form the basis of the claims of the Prisoner Class are common to and apply generally to all members of the Prisoner Class.

All of the Jails' policies are centrally promulgated, disseminated, and enforced by Defendants. The injunctive and declaratory relief sought is appropriate and will apply as a whole to all members of the Prisoner Class.

73.     The claims of the named plaintiffs are typical of the claims of the class.  The claims of the class members arise from the actions that resulted in damages to the class representatives and are based on the same legal theories.

## PRISONER SUB-CLASS ACTION ALLEGATIONS
### (Pregnant Women Prisoners)

74.     All Plaintiffs bring this action on their own behalf and, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of a class of all pregnant women who are now, or will be in the future, incarcerated in the Alameda County Jails ("Prisoner Class").

Numerosity: Fed. R. Civ. P. 23(a)(1)

75.     The Pregnant Prisoner -Sub Class is sufficiently numerous that joinder of all members of the class is impracticable and unfeasible. On information and believe, plaintiffs allege that 10% of all women prisoners in Santa Rita are pregnant, so that the current sub-class numbers 20 women.  Within a year's time, plaintiffs assert that Santa  Rita Jail processes and houses approximately 950 pregnant women.  Pregnant women are housed amongst all the other prisoners.  There is no separate facility for pregnant women.  Pregnant women are subject to the same schedules and same  housing conditions as all prisoners.  All prisoners in the Jails are subject to Defendants policies and procedures regarding sleep denial and sleep disturbance and the refusal to permit grievances.   Due to these policies and procedures, all prisoners in the Jails are currently harmed or are at substantial risk of being harmed, by these Jail practices.

76.     The jail is required to conduct pregnancy tests if requested or if the prisoner exhibits symptoms of pregnancy.  The Pregnant Prisoner Sub-Class members are identifiable using records maintained in the ordinary course of business by Defendants.

Commonality: Fed. R. Civ. P. 23(a)(2)

77.     There are multiple questions of law and fact common to the Pregnant Prisoner Sub-Class, including, but not limited to:

    a. Whether the jail's requirement that prisoners be in lit surroundings 24 hours a day violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

15

b.  Whether Defendants' scheduling to provide for only a maximum potential duration of five and a half (5.5) hours of nighttime sleep violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

c.  Whether Defendants' policies and practices of regulation sleep disruption violates the Due the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

d.  Whether Defendants' policies and practices of not permitting pregnant prisoners to have a sufficient block of uninterrupted sleep poses a substantial risk of serious harm to prisoners and their unborn fetuses in their custody;

e.  Whether Defendants have been deliberately indifferent to the Pregnant Prisoner Sub-Class members' risk of injury and harm from the scheduling of an insufficient duration of sleep and the regular disruption of the little sleep they are given, insufficient as it is;

78.   Defendants are expected to raise common defenses to these claims, including denying that their actions violate the law.

### Typicality: Fed. R. Civ. P. 23(a)(3)

79.   The claims of the named Plaintiffs are typical of the claims of the members of the Pregnant Prisoner Sub-Class as their claims arise from the same policies, practices, and courses of conduct, and their claims are based on the same theory of law as the Prisoner Class claims.

### Adequacy: Fed. R. Civ. P. 23(a)(4)

80.   Plaintiffs will fairly and adequately represent and protect the interests of the Pregnant Prisoner Sub-Class and diligently service as Class Representatives. Plaintiffs' interests are co-extensive with those of the Pregnant Prisoner Sub-Class and Plaintiffs have no conflict(s) of interest that would be antagonistic to those of the other class members. Plaintiffs have retained counsel who are competent and experienced in complex class action litigation and prisoner's rights litigation and who possess the resources necessary to fairly and adequately represent the Prisoner Class.

### Fed. R. Civ. P. 23(b)

81.   This action is also maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants policies, practices, actions, and omissions that form the basis of the claims of the Prisoner Class and Pregnant Prisoner Sub-Class are common to and apply generally to all members of the Prisoner Class. All of the Jails' policies are centrally promulgated, disseminated, and

16

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Upshaw et al v. Alameda County*,  United States District Court, Northern District of California, Case No. _

enforced by Defendants. The injunctive and declaratory relief sought is appropriate and will apply as a whole to all members of the Pregnant Prisoner Sub-Class.

82.     The claims of the named plaintiffs are typical of the claims of the Pregnant Prisoner Sub-Class.  The claims of the Pregnant Prisoner Sub-Class arise from the actions that resulted in damages to the class representatives and are based on the same legal theories.

## FIRST CAUSE OF ACTION

VIOLATION OF FOURTEENTH AMENDMENT RIGHTS BY DENYING PLAINTIFF AND OTHER PRISONERS THEIR BASIC HUMAN RIGHT TO NECESSARY SLEEP

**(Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983)**

83.     PLAINTIFFS UPSHAW , STEWART and HERNANDEZ and the Prisoner Class and Pregnant Prisoner Sub-Class repeat and re-allege the allegations in paragraphs 1 to 82 to the extent relevant, as if fully set forth in this Claim.

84.     The First Claim is asserted by Plaintiffs UPSHAW , STEWART and HERNANDEZ and the prisoner class against Defendants ALAMEDA COUNTY; ALAMEDA COUNTY SHERIFF'S OFFICE; SHERIFF GREGORY J. AHERN; ASSISTANT SHERIFF D. HOUGHTELLING, COMMANDER TOM MADIGAN; CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, AND DOES 1 THRU 50.

85.     By their policies and practices described above, Defendants subject Plaintiffs and the Prisoner Class and Pregnant Prisoner Sub-Class they represent, to a substantial risk of serious harm and injury from the harmful and inhumane effects of daily insufficient sleep duration.

86.     These policies and practices have been, and continue to be, implemented by Defendants and their agents, officials, employees and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of Plaintiffs' and the Prisoner Class' ongoing deprivation of due process rights secured by the United States Constitution under the Fifth and Fourteenth Amendments, are not rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to any such nonpunitive governmental purpose.

87.     The policies, practices and customs described above are the official policies, practices and customs of Defendant COUNTY OF ALAMEDA, and are the direct and proximate cause of Plaintiffs being subjected to known risks of serious harms in violation of the Fourteenth Amendment. The policies, practices and customs described above include Defendant COUNTY OF ALAMEDA's failure to train its staff in the face of an obvious need for training to prevent the violations described above.

17

88.     Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs and the Prisoner Class and Pregnant Prisoner Sub-Class they represent request relief as outlined below.

### SECOND CAUSE OF ACTION

VIOLATION OF EIGTH AMENDMENT RIGHTS

(BASIC HUMAN RIGHT TO SLEEP)

**(Eighth Amendment to the United States Constitution, 42 U.S.C. § 1983)**

89.     PLAINTIFFS UPSHAW , STEWART and HERNANDEZ and Prisoner Class and Pregnant Prisoner Sub-Class repeat and re-allege the allegations in paragraphs 1 to 82 to the extent relevant, as if fully set forth in this Claim.

90.     The First Claim is asserted by Plaintiffs UPSHAW , STEWART and HERNANDEZ, the Prisoner Class and Pregnant Prisoner Sub-Class against Defendants ALAMEDA COUNTY; ALAMEDA COUNTY SHERIFF'S OFFICE; SHERIFF GREGORY J. AHERN; ASSISTANT SHERIFF D. HOUGHTELLING,  COMMANDER TOM MADIGAN; CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, AND DOES 26 THRU 50.

By their policies and practices described above, Defendants subject Plaintiffs and the class members they represent, to a substantial risk of serious harm and injury from the harmful and inhumane effects of daily insufficient sleep duration.   A minimal duration of sleep is a minimal civilized measure of the necessity of life.

91.     These policies and practices have been, and continue to be, implemented by Defendants and their agents, officials, employees and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of Plaintiffs' and all class members' ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment.

The policies, practices and customs described above are the official policies, practices and customs of Defendant COUNTY OF ALAMEDA, and are the direct and proximate cause of Plaintiffs being subjected to known risks of serious harms in violation of the Eighth Amendment. The policies, practices and customs described above include Defendant COUNTY OF ALAMEDA's failure to train its staff in the face of an obvious need for training to prevent the violations described above.

92.     Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs and all class members they represent request relief as outlined below.

18

### THIRD CAUSE OF ACTION

VIOLATION OF DUE PROCESS & FOURTEENTH AMENDMENT RIGHTS

(SLEEP DISRUPTION)

**(Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983)**

93.     PLAINTIFFS UPSHAW , STEWART and HERNANDEZ and the Prisoner Class and Pregnant Prisoner Sub-Class repeat and re-allege the allegations in paragraphs 1 to 82 to the extent relevant, as if fully set forth in this Claim.

94.     The Third Claim is asserted by Plaintiffs UPSHAW , STEWART and HERNANDEZ and all class members they represent against Defendants ALAMEDA COUNTY; ALAMEDA COUNTY SHERIFF'S OFFICE; SHERIFF GREGORY J. AHERN; ASSISTANT SHERIFF D. HOUGHTELLING,  COMMANDER TOM MADIGAN; CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50,

95.     By their policies, practices and direct actions described above, Defendants subject Plaintiffs and the class members they represent, to a substantial risk of serious harm and injury from the harmful and inhumane effects of regular sleep disturbance.

96.     These policies, practices and direct actions have been, and continue to be, implemented by Defendants and their agents, officials, employees and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of Plaintiffs' and the Prisoner Class' ongoing deprivation of due process rights secured by the United States Constitution under the Fifth and Fourteenth Amendments, are not rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to any such nonpunitive governmental purpose.

97.     The policies, practices and direct actions described above are the official policies, practices and customs of Defendant COUNTY OF ALAMEDA, and are the direct and proximate cause of Plaintiffs being subjected to known risks of serious harms in violation of the Fifth and Fourteenth Amendment. The policies, practices and customs described above include Defendant COUNTY OF ALAMEDA's failure to train its staff in the face of an obvious need for training to prevent the violations described above.

98.     Defendants have been and are aware of all of the deprivations complained of herein, and

19

have condoned or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs and all class members they represent request relief as outlined below.

## FOURTH CAUSE OF ACTION

VIOLATION OF EIGHTH AMENDMENT RIGHTS

CRUEL AND UNUSUAL PUNISHMENT OF REGULAR SLEEP DISRUPTION
**(Eighth Amendments to the United States Constitution, 42 U.S.C. § 1983)**

99.     PLAINTIFFS UPSHAW , STEWART and HERNANDEZ and the prisoner class and pregnant prisoner subclass and re-allege the allegations in paragraphs 1 to 82 to the extent relevant, as if fully set forth in this Claim.

100.     The Fourth Claim is asserted by Plaintiffs UPSHAW , STEWART and HERNANDEZ and the class members against Defendants ALAMEDA COUNTY; ALAMEDA COUNTY SHERIFF'S OFFICE; SHERIFF GREGORY J. AHERN; ASSISTANT SHERIFF D. HOUGHTELLING, COMMANDER TOM MADIGAN; CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50,

101.     Defendants CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50, acting or purporting to act in the performance of his/her official duties by subjecting Plaintiffs and the members of the prisoner class' to ongoing and regular sleep disturbances in violation of their rights secured by the Eighth Amendment of the U.S. Constitution.

102.     Defendants CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50's acting or purporting to act in the performance of their official duties as law enforcement officers, failed to intercede and/or were integral participants to complained of actions of deliberating disturbing and interfering with Plaintiffs and the members of the prisoner class' right to the human necessity of sleep,  in violation of their rights secured by the Eighth Amendment of the U.S. Constitution.

103.     Defendants ALAMEDA COUNTY, ALAMEDA COUNTY SHERIFF'S OFFICE,

GREGORY AHERN, D. HOUGHTELLING, TOM MADIGAN, and DOE 26-50, acting under color of state law and as policymaking authorities, knew or should have known that subordinate employees under their command, including Defendants DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK and DOE 1 through DOE 25, were inadequately trained, supervised, or disciplined resulting from their inadequate policies, customs, or practices concerning the actions of regularly disturbing and interfering with prisoners' sleep in violation of Plaintiff s and the prisoner class members' right to the human necessity of sleep, secured by the Eighth Amendment of the U.S. Constitution.

104.    The policies, practices and direct actions described above are the official policies, practices and customs of Defendant COUNTY OF ALAMEDA, and are the direct and proximate cause of Plaintiffs and the prisoner class members' and the pregnant prisoner sub-class being subjected to known risks of serious harms in violation of the Eighth Amendment. The policies, practices and customs described above include Defendant COUNTY OF ALAMEDA's failure to train its staff in the face of an obvious need for training to prevent the violations described above.

105.    Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs and all class members they represent request relief as outlined below.

## FIFTH CAUSE OF ACTION

### (Article I, Section 7 of the California Constitution)

106.    PLAINTIFFS UPSHAW , STEWART and HERNANDEZ and the prisoner class and pregnant prisoner sub-class they represent re-allege the allegations in paragraphs 1 to 82 to the extent relevant, as if fully set forth in this Claim.

107.    The Fifth Cause of Action is asserted by Plaintiffs UPSHAW , STEWART and HERNANDEZ and all class members against all Defendants.

108.    Defendants, by deliberately preventing Plaintiffs and members of the prisoner class from being able to obtain adequate sleep both by limiting the available time for night time sleep and through actions that interrupt, interfere, disrupt and disturb night time sleep, imposes an atypical, substantial, and different hardship on the prisoner in relation to the ordinary incidents of incarcerated life, so as to create a liberty interest protected by due process.   By their policies and practices described above, Defendants subject Plaintiffs and the Prisoner Classes they represent, to a substantial risk of harm due to the denial of due process in relationship to the ordinary, human requirement of sleep.  These policies and practices

21

have been, and continue to be, implemented by Defendants and their agents or employees in their official capacities, and are the proximate cause of Plaintiffs' and the Prisoner Classes' ongoing deprivation of rights secured by the California Constitution, Article I, Section 7.

109.    Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs and the class members they represent request relief as outlined below.

### SIXTH CAUSE OF ACTION

NEGLIGENCE

110.    PLAINTIFFS UPSHAW , STEWART and HERNANDEZ and the prisoner class and pregnant prisoner sub-class repeat and re-allege the allegations in paragraphs 1 to 82 to the extent relevant, as if fully set forth in this Claim.

111.    The Sixth Cause of Action is asserted by Plaintiffs UPSHAW , STEWART and HERNANDEZ and the class members against Defendants CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50.

112.    Defendants SHERIFF GREGORY J. AHERN; ASSISTANT SHERIFF D. HOUGHTELLING,  COMMANDER TOM MADIGAN; CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to Plaintiffs' rights secured by the Eighth and Fourteenth Amendments of the U.S. Constitution, or were wantonly or oppressively done.

113.    As a direct and proximate result of Defendants ALAMEDA COUNTY; ALAMEDA COUNTY SHERIFF'S OFFICE; SHERIFF GREGORY J. AHERN; ASSISTANT SHERIFF D. HOUGHTELLING,  COMMANDER TOM MADIGAN; CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50 and DOE 1 to 20's actions and inactions, Plaintiffs and members of the class suffered injuries entitling them  to receive compensatory damages

22

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Upshaw et al v. Alameda County,*  United States District Court, Northern District of California, Case No. _

against Defendants ALAMEDA COUNTY; ALAMEDA COUNTY SHERIFF'S OFFICE; SHERIFF GREGORY J. AHERN; ASSISTANT SHERIFF D. HOUGHTELLING,  COMMANDER TOM MADIGAN; CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50.and DOE 1 to 20's

WHEREFORE, Plaintiffs and class members pray for relief as hereunder appears.


## SEVENTH CAUSE OF ACTION

Intentional Infliction of Emotional Distress

(Cal. Gov. Code § 820(a))

114.    PLAINTIFFS UPSHAW , STEWART and HERNANDEZ and the class members repeat and re-allege the allegations in paragraphs 1 to 53 to the extent relevant, as if fully set forth in this Claim. The Seventh Cause of Action is asserted by Plaintiffs UPSHAW, STEWART and HERNANDEZ and all class members against Defendants CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50.

115.    Defendants CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50 acting or purporting to act in the performance of their official duties as peace officers, engaged in outrageous conduct and, as a result that outrageous conduct. Plaintiffs and members of plaintiff class did suffer and continue to suffer severe emotional distress.

116.    Defendants CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50 actions and inactions constituted oppression and/or malice resulting in great harm to Plaintiffs and members of plaintiff class.

117.    As a direct and proximate result of Defendants CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY STINSON, DEPUTY

23

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Upshaw et al v. Alameda County,*  United States District Court, Northern District of California, Case No. _

SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK AND DOES 1 THRU 50 actions and inactions, Plaintiffs and all members of plaintiff class suffered injuries entitling them to receive compensatory and punitive damages against Defendants CAPTAIN D. HESSELEIN, CAPTAIN TARA RUSSELL, CAPTAIN D. SKOLDKVIST, DEPUTY WATSON, DEPUTY STINSON, DEPUTY SENSIBA, DEPUTY HENDERSON, DEPUTY GUERRA, DEPUTY CRANDALL, DEPUTY CHANDRA, DEPUTY BURBANK, AND DOES 1 THRU 50.

WHEREFORE, Plaintiffs and class members prays for relief as hereunder appears.

## REQUEST FOR RELIEF

Plaintiffs and the class and subclass they represent have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiffs are granted the relief they request. Plaintiffs and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the constitutions and laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the constitutions and laws of the United States and the State of California.

WHEREFORE, PLAINTIFF and all class members prays for judgment and the following relief against DEFENDANTS as follows:

1.      Enter injunctive relief directing DEFENDANTS, absent exigent circumstances to:

   a.      Prohibit over-head light, loud noise, public address system announcements and scheduled prisoner activities for at least a 7-hour period each night;

   b.      Prohibit correctional staff from waking prisoners during the nighttime sleeping hours including during any safety checks;

   c.      Prohibit maintenance and cleaning work during night time sleep hours;

   d.      Prohibit new hire staff training during night time sleep hours; and,

   e.      Provide all prisoners with the ability to have uninterrupted and undisturbed block of night time sleep of no less than 7 hours.

2.      Award compensatory and punitive damages;

3.      Award declaratory relief according to proof;

4.      Award PLAINTIFFS costs and expense of this action and reasonable attorney's fees in accordance with 42 U.S.C. § 1988 and other appropriate authority;

5.      An order retaining jurisdiction of this case until Defendants have fully complied with the

24

1   orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the
2   future absent continuing jurisdiction; and
3          6.      Such other and further relief as the case requires and the Court deems just and proper.
4
    Dated: December 31, 2018                    LAW OFFICE OF YOLANDA HUANG
5
6
7                              By:  _/s/ Yolanda Huang_____
                                      YOLANDA HUANG
8
9                              DENNIS CUNNINGHAM
10                             By:  __/s/ Dennis Cunningham____
                               DENNIS CUNNINGHAM
11
12                             ATTORNEYS FOR PLAINTIFFS
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28