United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIKISHA UPSHAW, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALAMEDA COUNTY, et al.,<br><br>Defendants. | Case No. 3:18-cv-07814-JD<br><br>**ORDER RE MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 19 |

Plaintiffs are women pretrial detainees housed in jails maintained and operated by defendants Alameda County and the Alameda County Sheriff's Office. Plaintiffs brought a class action complaint under 42 U.S.C. Section 1983 alleging that defendants violated their constitutional rights through jail procedures that deprived them of a minimal level of nightly sleep. Dkt. No. 1. The challenged procedures include a "pill call" to give medications to detainees that starts at 2:30 a.m. followed by breakfast service at 4:00 a.m., and cell checks every 30 minutes at night using flashlights and overhead lights. Pending resolution of the Section 1983 claims on the merits, plaintiffs seek a preliminary injunction to prohibit these and other practices that prevent sleep. Dkt. No. 19. The request for an injunction is granted in part.

**BACKGROUND**

Plaintiff Upshaw is housed in the Santa Rita Jail facility, where she has been in detention for over 26 months as she waits for her trial. Dkt. No. 19-4 ¶ 9. Plaintiff Stewart is also housed in the Santa Rita Jail and has been waiting for her trial for over six months. Dkt. No. 19-5 ¶ 1. Plaintiff Hernandez was released from custody and will not considered for purposes of the injunction motion.

The salient facts are undisputed. Declarations from deputy sheriffs who work the 5:00 p.m. to 5:00 a.m. shift in the jail establish that defendants maintain the following schedule as part of their standard operating procedures:

> 8:00 p.m.: Cell cleaning by inmates begins.
>
> 11:00 p.m.: Lights out, subject to delays for unfinished cleaning. Main lighting is dimmed but tier lighting in aisles outside cells stays on.
>
> 2:30 a.m.: Cell-by-cell pill call by a deputy and nurse for inmates with pre-breakfast medication requirements.
>
> 4:00 a.m.: Main lights turned on for breakfast service.
>
> 4:30 a.m.: Main lights dimmed but not extinguished after breakfast.

Declaration of Deputy Guerra, Dkt. No. 24-5 ¶¶ 2, 5-7, 11; Declaration of Deputy Burbank, Dkt. No. 24-2 ¶¶ 2, 5-7, 10.

In practice, then, defendants give detainees no more than five hours of lights-out time, and on occasion even less if cell cleaning isn't finished. That minimal time is further disrupted after just three-and-a-half hours by a team handing out prescriptions in the dead of night. Defendants also acknowledge that they make "mandatory" announcements over the public address system during the lights-out hours. Guerra Decl., Dkt. No. 24-5 ¶ 13. Plaintiffs have submitted declarations stating that they cannot sleep through these activities, and often get as little as three hours of uninterrupted sleep each night. *See*, *e.g.*, Declaration of Tikisha Upshaw, Dkt. No. 19-4 ¶¶ 9-10; Declaration of Tyreka Stewart, Dkt. No. 19-5 ¶ 1.

The sleep disruptions inherent in this standard schedule are compounded by a cell-by-cell safety and general observation check that deputies do every 30 minutes for 24 hours a day and seven days a week. *See* Guerra Decl., Dkt. No. 24-5 ¶ 9. During nighttime hours, the deputies rely on ambient light to see into the cells, and may shine a flashlight in as well to make sure the detainee is not in distress. Deputies may also open the cell door and call the inmate's name. *Id*. ¶ 10; Burbank Decl., Dkt. No. 24-2 ¶ 9.

## LEGAL STANDARDS

Preliminary injunctions are "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he [or she] is likely to succeed on the merits, that he [or she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his [or her] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Garcia v. Google, Inc.*, 786 F.3d 733, 740 (same). In our circuit, a plaintiff may also obtain a preliminary injunction under a "sliding scale" approach by raising "serious questions" going to the merits of plaintiff's claims and showing that the balance of hardships tips "sharply" in his or her favor. *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018); *Vanguard Outdoor LLC v. City of L.A.,* 648 F.3d 737, 740 (9th Cir. 2011). At "an irreducible minimum," the party seeking the injunction "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Airbnb, Inc. v. City and Cnty. of San Francisco*, 217 F. Supp. 3d 1066, 1072 (N.D. Cal. 2016) (citation omitted); *see also Garcia*, 786 F.3d at 740.

The merits determination here is made in the context of plaintiffs' status as state pretrial detainees. The parties focused almost entirely on the Eighth Amendment prohibition on cruel and unusual punishment for those convicted of an offense, but plaintiffs are not in jail after a trial and conviction. As pretrial detainees, they are entitled to the protections of the Due Process Clause in the Fourteenth Amendment as well as the specific substantive guarantees of the federal Constitution. *Bell v. Wolfish*, 441 U.S. 520, 535-37 and n.16 (1979); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008). The Eighth Amendment establishes a constitutional floor in the sense that a jail condition deemed to be cruel and unusual would necessarily amount to an impermissible punishment of a pretrial detainee, but plaintiffs have rights beyond those afforded to the duly convicted. The Due Process Clause of the Fourteenth Amendment protects a broader class of interests than the Eighth Amendment, and proscribes any conduct that amounts to punishment, cruel or otherwise, of a person detained before trial. *Bell*, 441 U.S. at 535-37; *Chappell v. Mandeville*, 706 F.3d 1052, 1059 (9th Cir. 2013); *Pierce*, 526 F.3d at 1205.

Keeping jails safe and secure is, of course, a legitimate and important governmental interest, and the expert judgment of the agencies and officers about the policies and procedures needed to achieve that goal should be respected. *Bell*, 441 U.S. at 546-47; *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326 (2012). To amount to a punishment, the pretrial detention condition must cause harm that exceeds or is independent of the inherent discomforts of confinement, and must be rationally unrelated to a legitimate nonpunitive governmental objective or be excessive in relation to that purpose. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473-74 (2015); *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004). In the absence of evidence of an express intent to punish, "it may be possible to infer a given restriction's punitive status 'from the nature of the restriction.'" *Pierce*, 526 F.3d at 1205 (quoting *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002)).

Because plaintiffs' constitutional claims are presented under Section 1983, plaintiffs must show that the challenged conditions were part of a policy, custom or practice officially adopted by defendants. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). They must also establish that the policy or custom "evince[s] a 'deliberate indifference' to the constitutional right and [is] the 'moving force behind the constitutional violation.'" *Rivera v. City of L.A.*, 745 F.3d 384, 389 (9th Cir. 2014). Constitutional deprivations that are the product of mere negligence or accident are not actionable. *Kingsley*, 135 S.Ct. at 2472.

With respect to the record before the Court, each side filed a blizzard of objections to the other's declarations and other evidence. The rules of evidence do not strictly apply to preliminary injunction proceedings, and the Court will use its broad discretion to evaluate the record as it currently stands. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013); *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). In any event, the findings and conclusions here are based mainly on undisputed facts.

## DISCUSSION

There is no question that running a jail is an extremely difficult task, and the discretion of the sheriff's department to solve problems and protect the health and safety of detainees should be treated with a substantial measure of deference. It is equally true that detention in jail is not

4

expected to be a pleasant or comfortable experience. *See Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981).

But the Constitution does not permit inhumane treatment of duly convicted prisoners, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), all the more so for pretrial detainees who have not had their day in court. And when the state takes a person into custody for any reason, the Constitution imposes a duty to provide for the detainee's basic human needs. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). Conditions of confinement that deprive detainees of those needs or "the minimal civilized measure of life's necessities" violate the Constitution. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes*, 452 U.S. at 347).

Defendants do not dispute that "sleep undoubtedly counts as one of life's basic needs." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). No reasonable person would disagree that "sleep is critical to human existence." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013). Conditions of confinement that prevent prisoners from getting at least a minimal amount of sleep have been held to violate the Eighth Amendment's proscription of cruel and unusual punishment. *See*, *e.g.*, *id.*; *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 367 (N.D.N.Y. 2010). A constitutional deprivation necessarily follows under the Fourteenth Amendment for conditions that unreasonably deprive pretrial detainees of sleep.

Defendants do not contest that the nighttime schedule and cell checks are an official policy and practice undertaken deliberately and purposefully. They argue mainly that they need to run the jails under these conditions for legitimate purposes. Specifically, defendants assert that the nighttime schedule of 2:30 a.m. pill calls and 4:00 a.m. breakfast service is intended to manage the medical needs of detainees and make sure they are up and ready to go for morning court calls. *See* Guerra Decl., Dkt. No. 24-5 ¶ 11; Burbank Decl., Dkt. No. 24-2 ¶ 10; Declaration of Phillip Lawrence, Dkt. No. 24-8 ¶ 34.

These are certainly legitimate goals, but defendants have not shown that the near-constant disruptions during the five hours of lights-out time are reasonably related to those purposes. No one can argue with the proposition that detainees with medical needs should get their

5

prescriptions, but why at 2:30 a.m.? Defendants do not say, and they have not proffered any declarations or other evidence from healthcare professionals indicating that a 2:30 a.m. delivery time is a medical necessity or even a good practice. Defendants offer only an opinion by a retired captain from another sheriff's office to the effect that jail administrators are not doctors and just do what they're told by the medical professionals. Lawrence Decl., Dkt. No. 24-8 ¶¶ 10, 41. That cursory comment hardly establishes the reasonableness of a 2:30 a.m. pill call.

Defendants also assert that the pill call is reasonable because some medications should be taken before breakfast, which starts at 4:00 a.m. Dkt. No. 24 at 9; Guerra Decl., Dkt. No. 24-5 ¶¶ 7-11; Burbank Decl., Dkt. No. 24-2 ¶¶ 6, 10; Declaration of Angelique Henderson, Dkt. No. 24-6 ¶ 10. That is untenable bootstrapping because defendants do not proffer any facts showing that turning the main lights on and serving breakfast throughout the jail at 4:00 a.m. is itself justified. Defendants make conclusory statements that they need to do this to make sure they can transport detainees to court for morning proceedings, *see, e.g.,* Dkt. No. 24 at 9; Lawrence Decl., Dkt. No. 24 ¶ 34, but they again offer no concrete evidence explaining why this is so. There is nothing in the record to show that breakfast at 4:00 a.m. is reasonably related to meeting the hearing times or other judicial needs of the courts handling the criminal cases of the detainees in defendants' custody.

While defendants are entitled to a good measure of deference in operating the jails, the nighttime schedule as it currently stands is not reasonable on the record before the Court. The Court finds that plaintiffs have shown a likelihood of success on the merits for this particular part of their Fourteenth Amendment claim. At the very least, they have raised a serious question about the constitutionality of defendants' nighttime policies and resulting sleep deprivation for detainees. The Court also finds that plaintiffs have established irreparable harm. That is because plaintiffs have made out the likelihood of a constitutional deprivation, which "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). An injunction to prevent the violation of constitutional rights is also, perforce, in the public interest. *Id.*; *see also Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). With respect to the "serious questions" test, the balance of hardships tips sharply in plaintiffs' favor for the same

reasons, and because the government cannot be harmed by an injunction that forbids an unconstitutional practice. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

The policy of cell checks every 30 minutes leads to a different result. Defendants have established, with no meaningful opposition by plaintiffs, that this policy is consistent with safety standards mandated for local detention facilities by California state regulations. *See* Dkt. No. 24 at 7-8 (citing Cal. Code Regs. tit. 15). In addition, defendants have shown that they have implemented procedures to minimize the intrusiveness of the checks by, for example, shining flashlights indirectly into cells and other techniques. *See* Declaration of Thomas Madigan, Dkt. No. 24-9 ¶ 3; Guerra Decl., Dkt. No. 24-5 ¶ 10; Burbank Decl., Dkt. No. 24-2 ¶ 9. Plaintiffs challenge the extent to which these techniques are actually used, but the record is at best sharply conflicted on the facts, and the Court cannot say that plaintiffs have carried their burden for a preliminary injunction at this time. So, too, for plaintiffs' other sleep-related complaints.

The final question concerns the scope of the injunction for the sleep deprivations caused by the nighttime schedule. The Court typically has broad discretion to correct constitutional violations. *See Doe v. Kelly*, 878 F.3d 710, 720 (9th Cir. 2017). But the Prison Litigation Reform Act of 1995 ("PLRA") imposes some limits on prospective relief in an action involving prison conditions. *See* 18 U.S.C. § 3626(a); *Oluwa v. Gomez*, 133 F.3d 1237, 1239 (9th Cir. 1998). Under the PLRA, a preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

The Court finds that the best approach to fashioning a remedy is for the parties to meet and confer on a form of injunction that is consistent with the PLRA and meets defendants' operational needs, while ensuring a reasonable amount of sleeping time for detainees in a manner consistent with this order. The parties should file a joint proposed order by April 11, 2019. To be clear, this is not an opportunity to re-argue the injunction or submit new evidence or declarations. This is intended to be a practical effort to draft a properly tailored injunction.

7

## CONCLUSION

A preliminary injunction is granted on terms consistent with this order and subject to the Court's review of the parties' submission.

**IT IS SO ORDERED.**

Dated: March 27, 2019

JAMES DONATO
United States District Judge